FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

2014 SEP 11 ₱ 3: 55

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CATHERINE BLOCH and SCOTT BLOCH, <br> On behalf of themselves and all others similarly <br> Situated, <br>             Plaintiffs, <br> v. <br><br> HOMESITE INSURANCE COMPANY, <br> AIG INSURANCE SERVICES, INC. <br> and 21st CENTURY INSURANCE, <br><br>             Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 

1: 14 cv 1208
AJT / IDD

INDIVIDUAL AND CLASS
ACTION COMPLAINT FOR
BREACH OF CONTRACT
VIOLATION OF CH. 93A
MASSACHUSETTS CONSUMER
PROTECTION ACT and
CH. 176A MASSACHUSETTS
UNFAIR COMPETITION
**TRIAL BY JURY DEMANDED**

## PRELIMINARY STATEMENT

1.   Plaintiffs Catherine and Scott Bloch (collectively, "Plaintiffs") bring this

action against HOMESITE INSURANCE, AMERICAN INSURANCE GROUP (AIG)

AND 21ST CENTURY INSURANCE (hereafter "Defendants").  Plaintiffs were

customers of AIG and its affiliate, 21st Century, purchasing automotive and homeowners

insurance from them in Kansas and, upon their move to Virginia in 2002, in Alexandria,

Virginia.  They always had a $500 deductible for any homeowners insurance and storm or

other damage.  Over the course of a decade of doing business with AIG, Plaintiffs had no

problems with any claims they filed, and they would have their $500 deductible applied

to any claim.  Plaintiffs moved to Fairfax, Virginia and asked their AIG broker to obtain

the same coverage and deductible as they had at the home in Alexandria, Virginia.  The

premiums were usually around $800 per year for such insurance.  Mrs. Catherine Bloch

interacted at all times with the broker for AIG/21st Century insurance.  AIG sent the

policy for their home in Fairfax to Mrs. Bloch.  The premium was approximately the

same as the other home they had just moved from and it stated the deductible was $500.
She believed it was in all respects substantially the same policy as Plaintiffs had on their
prior home in Alexandria, from 2002 to 2009.

After a large storm caused significant damage to their home in Fairfax, in
September 8, 2012, Plaintiff Catherine Bloch contacted AIG and they sent an independent
adjuster to adjust the loss which was around $10,000 roof and water damage to the
interior of the home.  This storm also affected many homeowners in Virginia, Maryland.
AIG through its underwriter, HOMESITE INSURANCE wrote to Plaintiffs to inform
them that their deductible was not in fact $500 but instead $10,300 or so for certain types
of loss described as wind or hail, due to a complicated formula that was inside the policy
sent to Mrs. Bloch which she did not understand or have explained to her would be
placed in the new policy.  Neither Plaintiff was aware of any new additional deductible in
their policy of insurance and had not bargained for such and never would have gone with
defendants if they had known of this hidden provision that made all storm damage subject
to a deductible 20 times what they had bargained for. Defendants refused to pay for this
storm damage or the other damage that occurred in June, 2012 from another storm that
caused significant damage up the Eastern seaboard in Virginia, Maryland, New Jersey
and Pennsylvania.

2.  Defendant HOMESITE is based in Boston, Massachusetts, and writes over
$1,000,000,000 in homeowners insurance for Defendant AIG and other major insurance
companies throughout the United States.  Defendant's practices are in direct violation of
the contract of insurance that Plaintiffs and others similarly situated to them entered into
with their broker for homeowners' coverage with one particular deductible stated as a

specific amount such as $500 or $1000. This conduct by Defendants, in conspiracy with one another, is also in violation of the Massachusetts Consumer Protection Act and the Unfair Competition Laws of Massachusetts, Gen. Laws, Tit. 22, Ch. 93A and Ch. 176D of the Massachusetts statutes, Sec 3 for deceptive and unfair methods of competition in insurance policies.

3.   Defendants have a pattern and practice of misleading consumers to believe they are obtaining the kind of homeowners insurance they are used to, with a similar premium, with a very particular deductible for all damage, but then inserting in a deceptive and concealed way a complicated special deductible for wind and hail damage which comprises virtually all storm damage that can happen.

4.   This behavior by Defendants deprives consumers and Plaintiffs and those similarly situated, of a significant part of the benefit for the bargain and induces them to accept a bait and switch consumer agreement, for the purpose of reducing the cost of insurance for AIG and other carriers, and huge premiums for HOMESITE, while denying payment of any claims to most consumers whose storm losses will likely be on average between $1,000 and $10,000. In the case of those who suffered in the storm Sandy and other major storms, consumers have been denied hundreds of thousands in damages each.

5.   On information and belief, and according to abundant information on the world wide web, and based on other consumers who have expressed interest in participating in such a class action, Defendants have committed these deceptive acts and practices and failed to honor written agreements and oral agreements to procure appropriate homeowners insurance nationally for a number of years. On information and believe there are 1,000,000 or more consumers with this Homesite product that contain

the offending provisions and who have been deceived and deprived of the benefit of the

bargain for why they purchased homeowners insurance coverage.

### PARTIES, JURISDICTION AND VENUE

6.   Plaintiffs are citizens of the United States who reside at 9156 Moonstone Dr.,

Fairfax, Fairfax County, Virginia 22031 at all times applicable to this complaint.

7.   Defendant HOMESITE INSURANCE COMPANY is a Connecticut

corporation with its principal place of business in Boston, Massachusetts, whose

headquarters is located at  One Federal St, 4th FL, Boston, MA 02110, who underwrites

homeowners insurance policies for all of the major insurance companies including

Defendant AIG and 21st CENTURY, as well as Farmers, Progressive, Geico, State Farm

and others.   The Registered Agent for service of process on Homesite is

CORPORATION SERVICE COMPANY, 1111 EAST MAIN STREET, RICHMOND

VA 23219; however, Virginia provides for alternative means of service of process in its

statutes, including service on the Insurance Commissioner of Virginia.

8.   Defendant AIG (AIG INSURANCE SERVICES, INC.) is a Delaware

corporation (formerly known as American Insurance Group, aka AIG), with its principal

office in Houston Texas. AIG lists Boston, Massachusetts as the place of its Homeowners

Insurance program on the policy of insurance with Plaintiffs in 2005 to 2006 at their

Alexandria, Virginia address, showing 99 Bedford Street, Boston, MA 02111 as its

address.  It also shows that Homesite Insurance issued the policy.  The Registered Agent

for service of process on AIG is CORPORATION SERVICE COMPANY, Bank of

America Center, 16th Fl, 1111 EAST MAIN STREET, RICHMOND VA 23219.

9.   Defendant 21st CENTURY INSURANCE  is a Delaware

corporation (formerly known as American Insurance Group, aka AIG), with its principal office in Houston Texas. 21st Century/AIG lists Boston, Massachusetts as the place of its Homeowners Insurance program on the policy of insurance with Plaintiffs in 2009 to present at their Fairfax, Virginia address, showing 99 Bedford Street, Boston, MA 02111 as its address. It also shows that Homesite Insurance issued the policy.The Registered Agent for service of process on AIG is CORPORATION SERVICE COMPANY, Bank of America Center, 16th FL, 1111 EAST MAIN STREET, RICHMOND VA 23219.

10. Plaintiffs purchased their AIG/21st Century Homeowners Insurance, and the HOMESITE underwritten policy in Alexandria, Virginia in 2009.

11. This Court has subject matter jurisdiction over the asserted claims under 28 U.S.C. § 1331 and venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1391(a), (b) and (c). Jurisdiction is based upon the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) in that there are thousands of aggrieved consumers whose aggregate claims exceed $5,000,000 in that the claims of Plaintiffs are for damages in excess of $10,000 exclusive of costs and attorneys fees. On information and belief, there are at least 1,000,000 consumers who have been deprived of $500 of the benefit of their bargain, or more, in purchasing this deceptive homeowners' insurance coverage. The court has supplemental jurisdiction over the various state law consumer claims.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12. In or about March or April of 2002, while Plaintiffs were moving their permanent residence from Kansas to Alexandria, Virginia, Plaintiff Catherine Bloch contacted the AIG broker they used to obtain homeowners insurance to cover their new

dwelling at 8408 Stockade Dr., Alexandria, Virginia 22308.  The cost of that insurance
was approximately $800 per annum to cover the entire home and structure, contents,
from any loss from storm, firm, wind, hail, and theft or other loss.  The deductible for that
policy was $1,000 for any occurrence and contained no special deductible for wind/hail
damage or other special deductible.

13.  Plaintiffs lived at the address on Stockade Dr. from 2002 until July of 2009
when they moved to their new home residence at their current address of 9156
Moonstone Dr., Fairfax, VA 22031.

14. Plaintiffs were customers of AIG and its affiliate, 21st Century, purchasing
automotive and homeowners insurance from them in Kansas and, upon their move to
Virginia in 2002, in Alexandria, Virginia.  They always had a $500 deductible for any
homeowners insurance and storm or other damage.  Over the course of a decade of doing
business with AIG, Plaintiffs had no problems with any claims they filed, and they would
have their $500 deductible applied to any claim.  Plaintiffs moved to Fairfax, Virginia and
asked their AIG broker to obtain the same coverage and deductible as they had at the
home in Alexandria, Virginia.  The premiums were usually around $800 per year for such
insurance.

15. Mrs. Catherine Bloch interacted at all times with the broker for AIG/21st
Century insurance.

16. On July 6, 2009, AIG sent the policy for their home in Fairfax to Mrs. Bloch.
The premium was approximately the same as the other home they had just moved from
and it stated the deductible was $500.  She believed it was in all respects substantially the
same policy as Plaintiffs had on their prior home in Alexandria, from 2002 to 2009.

There had been no disclosure or explanation that this policy was any different in coverages or deductible from the policy they had had with AIG for many years.

17. On or about June 20, 2012, a storm came through Fairfax and caused limbs to fall against the siding and window wells of Plaintiff's home at 9156 Moonstone Dr., causing several thousand dollars in damages.

18. On September 8, 2012, a large storm system came through and caused a giant limb to fall on Plaintiff's home at 9156 Moonstone Dr., causing over 10,000 in damages to the roof, water damage to the interior, and loss of use.

19. On September 13, 2012, Plaintiff Catherine Bloch contacted AIG and they sent an independent adjuster to adjust the loss which was around $10,000 roof and water damage to the interior of the home.  This storm also affected many homeowners in Virginia, Maryland. AIG through its underwriter, HOMESITE INSURANCE wrote to Plaintiffs to inform them that their deductible was not in fact $500 but instead $10,300 or so for certain types of loss described as wind or hail, due to a complicated formula that was inside the policy sent to Mrs. Bloch which she did not understand or have explained to her would be placed in the new policy.

20.  On September 23, 2012, Defendant Homesite denied any responsibility to pay because it asserted that wind, not a tree limb, caused the damages, and that the wind/hail deductible of $10,300 applied.

21. Prior to this, neither Plaintiff was aware of any new additional deductible in their policy of insurance and had not bargained for such and never would have gone with defendants if they had known of this hidden provision that made all storm damage subject to a deductible 20 times what they had bargained for. Defendants refused to pay for this

storm damage or the other damage that occurred in June, 2012 from another storm that caused significant damage up the Eastern seaboard in Virginia, Maryland, New Jersey and Pennsylvania.

22. Neither Plaintiff would have purchased the policy or allowed such a large deductible for wind/hail damage had they been informed or had shown in a conspicuous and easy to understand way the ruse that Defendants were using, or had the broker simply told the Plaintiffs that we no longer offer the type of coverage you have on your old home and are asking for on the new one.

23. On each of the policies preceding the policy in 2009, AIG listed 99 Bedford, Boston, Massachusetts as its address for its "homeowners insurance program."

24. On the 2009 and forward, AIG listed that same address, but stated it was Homesite Insurance Company. It also listed 21st Century Insurance Homeowners Program, creating confusion whether Homesite was a separate company or the same company as 21st Century/AIG.

25. On information and belief, Defendant HOMESITE is based in Boston, Massachusetts, and writes over $1,000,000,000 in homeowners insurance for Defendant AIG and other major insurance companies throughout the United States. Defendant's practices are in direct violation of the contract of insurance that Plaintiffs and others similarly situated to them entered into with their broker for homeowners' coverage with one particular deductible stated as a specific amount such as $500 or $1000. This conduct by Defendants, in conspiracy with one another, is also in violation of the Massachusetts Consumer Protection Act and the Unfair Competition Laws of

Massachusetts, Gen. Laws, Tit. 22, Ch. 93A and Ch. 176D of the Massachusetts statutes, Sec 3 for deceptive and unfair methods of competition in insurance policies.

21. Defendants have a pattern and practice of misleading consumers to believe they are obtaining the kind of homeowners insurance they are used to, with a similar premium, with a very particular deductible for all damage, but then inserting in a deceptive and concealed way a complicated special deductible for wind and hail damage which comprises virtually all storm damage that can happen.

22. This behavior by Defendants deprives consumers and Plaintiffs and those similarly situated, of a significant part of the benefit for the bargain and induces them to accept a bait and switch consumer agreement, for the purpose of reducing the cost of insurance for AIG and other carriers, and huge premiums for HOMESITE, while denying payment of any claims to most consumers whose storm losses will likely be on average between $1,000 and $10,000. In the case of those who suffered in the storm Sandy and other major storms, consumers have been denied hundreds of thousands in damages each.

## THE CLASS CLAIMS

27. Hundreds of other persons have been mistreated with regard to their Homeowners policies of insurance, being similarly deceived by the one deductible for all losses except for the wind/hail damage deductible that is described in a complicated, confusing and deliberately deceptive way to make it difficult for consumers to understand what they are purchasing, and from whom. See, for example, the following websites:

http://www.consumeraffairs.com/insurance/homesite.html?page=2,

http://commonsenseconspiracy.com/2014/04/insurance-companies-sneaking-sky-high-wind-and-hail-deductibles-on-homeowners-read-your-policy/,

http://www.complaintsboard.com/?search=Homesite, http://homesite-insurance-company.pissedconsumer.com/.

28. The deductible does not explain what is considered to be damage caused by wind or hail, thus allowing Defendants to deny claims for all storm damage since Defendants argue that any damage from a storm is wind or hail damage, depriving the consumer of the benefit of the bargain.

29. These consumers have posted complaints on consumer websites on the world wide web for the last few years complaining of attempts to get Homesite to cover their losses only to be told their deductible is too high to cover their damage from storm damage, and then raising their rates and/or cancelling their insurance when they have a claim.

30. The court may therefore determine that more than one class of consumers have been affected by Defendants' common scheme to defeat consumers' expectations with regard to their homeowners' coverage with the concealed larger wind/hail deductible, by subclassing these claims by name of larger insurance carrier such as AIG, USAA, Farmers, State Farm, Geico, etc. or subclass according to whether the claim reflects new consumers of the Homesite product such as Plaintiffs versus those who were purchasing this product anew, or a subclass for those who only have a deceptively obtained policy of insurance and were deprived of a part of the benefit of the bargain but have not had a loss yet that required application of the wind/hail deductible.

31. All of these complaints of these individuals, satisfy the requirements of Fed.R.Civ.P. 23 for (1) numerosity, because there are thousands of such claims nationally, (2) commonality of fact and law, as they all fall under the MMWA and are breaches of

warranty and customer service regarding warranties, and differences of product or fact do

not predominate, but each complaint is subject to ready classification or subclassification;

(3) typicality, in that the claims of Plaintiffs are typical of the complaints of the class

concerning Sears' misconduct with regard to customer service and repairs of products

covered by Sears' warranties; and (4) adequacy of representation, in that Plaintiffs are a

couple whose husband has experience in consumer class actions and will adequately

represent the interests of the class, and class counsel will be obtained to properly

prosecute the claims of those nationally. The certification of a class or classes is superior

to other methods of prosecuting these claims for fairly and efficiently bringing these

matters. Damages in individual cases is too small to justify individual actions, and class

members would have great difficulty finding an attorney willing to prosecute such an

action individually.

## CLAIMS FOR RELIEF

### Count I

(Breach of Contract)

32. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-

31 as if set forth fully herein.

33. Plaintiffs requested homeowners insurance in 2009 for their home at 9156

Moonstone Dr., Fairfax, Virginia 20031, with a $500 deductible, and agreed to pay

Defendants approximately $800 per annum in premium as they had done for a number of

years.

34. Defendants accepted and forwarded a policy of insurance as if it were just like

what Plaintiffs had been receiving from Defendants and was represented to them as such but which contained terms that Plaintiffs had not bargained for but that were concealed or deceptive in nature and prevented Plaintiffs from knowing that Defendants had deceived them.

35. Plaintiffs made a demand for payment of loss for two losses in 2012 from storms in Virginia, causing in excess of $10,000 in damages.

36. On or about September 23, 2012, Defendants refused to pay for said damages in conformance with the agreement they made with Plaintiffs but instead asserted a new deductible for which Plaintiffs had not bargained, or 2% of the value of their home for any wind or hail damage, totaling by their strange formula, $10,300.00 deductible.

37. Defendant's failed to comply with their agreement to provide the same insurance with a $500 deductible that they had been receiving from Defendants. These breaches deprived Plaintiffs of the benefit of the bargain in purchasing the homeowners insurance.

38. In addition, Defendants did not act in good faith in procuring or performing \ the agreement to procure the insurance in question, and breached the covenant of good faith and fair dealing.

39. As a direct result of Defendant's breaches, Plaintiffs incurred economic loss for the two storms, and could not completely use their home for months while they disputed with Defendants.

40. As a directly result of the breach of Defendants, Plaintiffs have out of pocket losses to be proved in excess of $10,000.

41. Plaintiffs seek on their own behalf and on behalf of those similarly situated

12

their damages, and expenses incurred as a result of Defendant's breaches, together with interest and costs of this action.

## Count II

(Breach of Virginia Consumer Protection
Act of 1977, Va. Code Sections 59.1-196 to 59.1-207)

42. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-40 as if set forth fully herein.

43. Defendant's failed to properly and conspicuously represent to Plaintiffs and those similarly situated that they had no one deductible of $500 but a hidden, larger deductible for a major class of loss – storms – that was equal to 2% of the ascribed value of the home.

44. Defendants purposely concealed and made difficult to understand the hidden larger deductible for wind/hail, and did not define what it meant by such damage such as any damage from falling limbs or other object onto the home.

45. Defendants represented to Plaintiffs that they were getting what they thought was a homeowners' policy with a deductible of $500 just like they had, and the premium stayed the same, reinforcing the deceptive, unconscionable and unfair scheme of Defendants.

46. These failures deprived Plaintiffs of the benefit of the bargain in purchasing the same homeowners they thought they had enjoyed for years from Defendants. They are deceptive and unfair practices under the Act.

47. As a direct result of Defendant's breaches, Plaintiffs incurred economic loss and foreseeable incurring of costs, loss of use, and further repairs from delay.

48. Also as a direct result of Defendant's breaches, Plaintiffs expended numerous

hours in dealing with the misrepresentations and breaches by Defendant, as well as attorney fees in research and preparation of this action, and will in the prosecution of the claim.

49. Defendant is a supplier of services, and Plaintiffs are consumers of such goods and services within the meaning of the Virginia Consumer Protection Act ("VCPA"), and Plaintiffs' purchase of the Homesite Insurance Company homeowner's policy and the pursuit of the services were all a "consumer transaction" within the meaning of the VCPA.

50. Each and every aforementioned acts of Defendant in refusing to pay the loss in a timely way, switching Plaintiffs to this new product without their knowledge or consent, or other acts and practices, violates the VCPA.

51. Each of the aforementioned acts was willful and done with the knowledge of the probable harm that would be caused to Plaintiffs, and carries with it a civil penalty in the amount of $2,500.00, to which Plaintiff is entitled.

52. Defendant's behavior in refusing to pay for said loss, and in providing the deceptive new coverage, and entitled them to treble damages under § 59.1-204 of the VCPA.

53. All of these breaches are in violation of the Virginia Consumer Protection Act, and Plaintiffs seek on behalf of themselves and those similarly situated all damages to which they are entitled under the Act.

54. Plaintiffs seek on their own behalf and on behalf of those similarly situated attorneys fees, costs, and expenses incurred as a result of Defendant's breaches, together with interest and costs of this action.

14

## Count III

(Breach of Massachusetts Consumer Protection Act, Chapter 93A)

55. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-54 as if set forth fully herein.

56. Defendants failed to properly and conspicuously represent to Plaintiffs and those similarly situated that they had no one deductible of $500 but a hidden, larger deductible for a major class of loss – storms – that was equal to 2% of the ascribed value of the home.

57. Defendants purposely concealed and made difficult to understand the hidden larger deductible for wind/hail, and did not define what it meant by such damage such as any damage from falling limbs or other object onto the home.

58. Defendants represented to Plaintiffs that they were getting what they thought was a homeowners' policy with a deductible of $500 just like they had, and the premium stayed the same, reinforcing the deceptive, unconscionable and unfair scheme of Defendants.

59. Defendants' conduct caused Plaintiffs to act otherwise than they would have, and had they been informed or had presented in conspicuous fashion the deceptive deductible, they would have refused to pay the premium they were used to paying for much greater coverage and would have purchased a policy from a different company that provided all the coverage they were requesting for the single $500 deductible.

60. These failures deprived Plaintiffs of the benefit of the bargain in purchasing

the same homeowners they thought they had enjoyed for years from Defendants.  They are deceptive and unfair practices under the Act.

61.   As a direct result of Defendant's breaches, Plaintiffs incurred economic loss and foreseeable incurring of costs, loss of use, and further repairs from delay.

62.  Also as a direct result of Defendant's breaches, Plaintiffs expended numerous hours in dealing with the misrepresentations and breaches by Defendant, as well as attorney fees in research and preparation of this action, and will in the prosecution of the claim.

63.  Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce under Mass. Gen. Laws Ch. 93A, § 2(a).

64. Each and every aforementioned acts of Defendant in refusing to pay the loss in a timely way, switching Plaintiffs to this new product without their knowledge or consent, or other acts and practices, violates Ch. 93A.

65. A demand letter was sent to Defendants on October 26, 2012, alleging the deceptive acts and practices and bad faith practices of Defendants, but they refused to comply or provide any relief.

66. Each of the aforementioned acts was willful and done with the knowledge of the probable harm that would be caused to Plaintiffs, and Defendants use of these deceptive and unfair practices and acts was willful and knowing under Mass. Gen. Laws Ch. 93A, § 11, subjecting it to treble damages to which Plaintiffs are entitled.

67. All of these breaches are in violation of Ch. 93A, and Plaintiffs seek on behalf of themselves and those similarly situated all damages to which they are entitled under the Act.

68.  Plaintiffs seek on their own behalf and on behalf of those similarly situated attorneys fees, costs, and expenses incurred as a result of Defendant's breaches, together with interest and costs of this action.

### Count IV

(Breach of Massachusetts Unfair and Deceptive Competition practices in Insurance under Gen law Ch 176D)

69. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-68 as if set forth fully herein.

70. Defendants failed to properly and conspicuously represent to Plaintiffs and those similarly situated that they had no one deductible of $500 but a hidden, larger deductible for a major class of loss – storms – that was equal to 2% of the ascribed value of the home.

71. Defendants purposely concealed and made difficult to understand the hidden larger deductible for wind/hail, and did not define what it meant by such damage such as any damage from falling limbs or other object onto the home.

72. Defendants represented to Plaintiffs that they were getting what they thought was a homeowners' policy with a deductible of $500 just like they had, and the premium stayed the same, reinforcing the deceptive, unconscionable and unfair scheme of Defendants in competition for insurance business.

73. Defendants further engaged in unfair competition by failing to define wind or hail damage and thus deprived the consumer of any reasonable opportunity to know what Defendants were trying to accomplish with their deceptive 2% special deductible for wind and hail damage.

74. Defendants' conduct caused Plaintiffs to act otherwise than they would have,

17

and had they been informed or had presented in conspicuous fashion the deceptive deductible, they would have refused to pay the premium they were used to paying for much greater coverage and would have purchased a policy from a different company that provided all the coverage they were requesting for the single $500 deductible.

75. These failures deprived Plaintiffs of the benefit of the bargain in purchasing the same homeowners they thought they had enjoyed for years from Defendants.  They are deceptive and unfair practices under the Act.

76. Defendants employed additionally deceptive and unfair competition practices in insurance by listing AIG Insurance and 21st Century insurance with the same address in Boston, Massachusetts as Homesite Insurance Company, thus reinforcing the appearance that plaintiffs and similarly situated consumers were getting the AIG product they were used to getting for homeowners insurance.

77. As a direct result of Defendant's breaches, Plaintiffs incurred economic loss and foreseeable incurring of costs, loss of use, and further repairs from delay.

78. Also as a direct result of Defendant's breaches, Plaintiffs expended numerous hours in dealing with the misrepresentations and breaches by Defendant, as well as attorney fees in research and preparation of this action, and will in the prosecution of the claim.

79.  Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce under Mass. Gen. Laws Ch. 176D, § 2.

80. Each and every aforementioned acts of Defendant in refusing to pay the loss in a timely way, switching Plaintiffs to this new product without their knowledge or consent, or other acts and practices, violates Ch. 176D.

81. A demand letter was sent to Defendants on October 26, 2012, alleging the deceptive acts and practices and bad faith practices of Defendants, but they refused to comply or provide any relief.

82. Each of the aforementioned acts was willful and done with the knowledge of the probable harm that would be caused to Plaintiffs, and Defendants use of these deceptive and unfair practices and acts was willful and knowing under Mass. Gen. Laws Ch. 176D.

83. All of these breaches are in violation of Ch. 176D, and Plaintiffs seek on behalf of themselves and those similarly situated all damages to which they are entitled under the Act.

84. Plaintiffs seek on their own behalf and on behalf of those similarly situated attorneys fees, costs, and expenses incurred as a result of Defendant's breaches, together with interest and costs of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief from the Court:

1. Damages in the amount equal to all out of pocket expenses of themselves and those similarly situated.

2. A permanent injunction against Homesite and AIG from continuing to behave in this unfair, deceptive and improper manner in carrying out the duties under warranties toward those who purchase homeowners' insurance.

3. Civil penalties.

4. Treble damages.

5. Reasonable attorneys fees and costs of the court.

6.      Prejudgment and post-judgment interest for out of pocket expenses and other damages, and such other and further relief as the court deems just and equitable.

Respectfully submitted,

Catherine Bloch
Scott Bloch
9156 Moonstone Dr.
Fairfax, VA 22031
(703) 258-4842
Plaintiffs pro se

_____
Scott Bloch

_____
Catherine Bloch

## REQUEST FOR JURY TRIAL

Plaintiffs hereby request trial by jury on all claims so triable.

_____
Scott Bloch

_____
Catherine Bloch

20